WALTER L. CASTEEL, PLAINTIFF IN ERROR, v. MOLLIE C. DEARMONT, ET AL., DEFENDANTS IN ERROR.*

Kansas City Court of Appeals.   November 7, 1927.

1218

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 1587, p. 1410, n. 42; 4CJ, section 2549, p. 658, n. 40; Municipal Corporations, 44CJ, section 2588, p. 391, n. 68; section 3015, p. 608, n. 79; section 3017, p. 609, p. 93, 94; p. 610, n. 95; section 3155, p. 684, n. 37; section 3530, p. 852, n. 27; section 3533, p. 855, n. 53; Pleading, 31Cyc, p. 700, n. 18.

*A. M. Tibbels* and *Frank Petree* for plaintiff in error.

*J. B. Dearmont* and *Culver, Phillip & Voorhees* for defendant in error.

ARNOLD, J.—This is an action by the assignee to recover on three special tax bills issued by the board of aldermen of the city of Mound City, Holt county, Missouri, against lots Two and Three in

Block 27 in said city for their proportion of the cost of grading, paving and guttering Seventh street in said city.

The facts of record are that the lots in question are contiguous, border on Seventh street and are owned by defendants Mollie C. Dearmont and her husband, J. B. Dearmont. On June 14, 1919, a petition was presented to the board of aldermen of said city for the grading, curbing and paving of Seventh street in said city from the west line of Mill street to the west end of Seventh street. On June 30, 1919, a bid for the engineering work by the firm of Leslie and Barnes was accepted. At an adjourned meeting on July 7, 1919, the council met and passed an ordinance, employed an engineer and then adjourned to July 18, 1919. On said last-named date, all members being present, the council passed special grade ordinance No. 25, establishing the grade on Seventh street; and special paving ordinance No. 26, approving plans, specifications and profiles for the paving of Seventh street from the west line of Mill street to a point 705.53 feet west of the west line of Railroad street.

There was a resolution, denominated Paving Resolution F, passed at the same time, declaring necessary the grading, paving and curbing of Seventh street from the west line of Mill street to a point 705.53 feet west of the west line of Railroad street; and providing for the width of the paving on the individual blocks bordering thereon, and other details not involved herein. Resolution ''F'' also provided that the said improvement should be made by bringing said street to the grade established by Special Grade Ordinance No. 25. The said resolution ''F'' also provided that said pavement should consist of Portland cement concrete five inches in finished thickness at the curb and from eight to ten inches at the center of the roadway. Said resolution also provides that, as the general revenue of the city is not in a condition to warrant an expenditure therefrom to bring said street to the established grade, the cost thereof should be included in the cost of paving; that the cost of said work, including the cost of bringing the said street to the established grade should be levied as a special assessment upon all lots and pieces of ground upon either side of said street abutting thereon, as provided by law, and special tax bills bearing interest at the rate of eight per cent per annum after thirty days from date of issue, evidencing such assessment, should be issued to the contractor in payment for said work.

On August 13, 1919, Special Paving Ordinance No. 30 was passed, providing for the grading, paving and curbing of Seventh street, in accordance with the provisions of said resolution ''F.'' Thereafter on August 22, the engineer's estimate was approved by the board of aldermen, and, on the same day the bid of the Casteel Engineering Company was approved and a contract entered into which was ratified September 1, 1919. This contract provided for the beginning and completion of the work as follows:

"The work embraced in this contract shall be begun within ten days after this contract binds and takes effect, and shall be prosecuted regularly and uninterruptedly thereafter with such force as to insure its full completion within sixty days from the date of its award; the time of beginning, rate of progress, and time of completion being essential conditions of this contract."

The contract also contained the following provision:

"And the said parties of the second part hereby further agree with the city of Mound City, that if the work embraced in this contract be not begun within ten days after this contract binds and takes effect, and prosecuted regularly and uninterruptedly thereafter, in accordance with the terms and provisions thereof (unless the board of aldermen shall direct otherwise in writing) with such force as to secure its full completion within sixty days, said time to begin with the award of the contract, they will pay the city of Mound City the sum of twenty-five dollars ($25) per day for each and every day beyond the day set for the completion of the work under the terms of this contract as liquidated damages for such breach of contract."

On December 15, 1919, an ordinance was passed extending the time for the completion of the work from November 1, 1919, to May 15, 1920, and on May 7, 1920, a further extension of thirty days was granted. On June 15, the time was further extended to June 30, 1920, and on July 2, a further extension was asked and refused. The record is silent as to the date of the actual completion of the work but it appears that on August 9, the city attorney was instructed to prepare an ordinance accepting the pavement, and this ordinance, known as Special Paving Ordinance No. 92, was passed by the board of aldermen on August 13, 1920. Section 1 thereof provides for apportionment of the costs of the improvement; section 2 levies and assesses against each abutting lot its *pro rata* share as a special tax. The following assessment was levied against the property in question:

"Description: Lots 2 and 3, Block 27. Intersection $288.03. Tax levied as follows: Abutting paving $697.46; grading $98.04. Total assessment, $1,225.62."

Section 3 of the ordinance is as follows:

"It appearing from the report of the city engineer that the curb and pavement constructed and laid on that portion of Seventh street lying west of Railroad street has not been constructed according to the plans and specifications and contract therefor, and that said curb and pavement is now in poor condition, the special tax above provided for and levied against the abutting property on that portion of Seventh street is levied with the understanding and agreement between the said Casteel Engineering and Construction Com-

pany and the said city of Mound City, that the tax bills therefor are not to be delivered to the said Casteel Engineering and Construction Company or to its assigns until such time as the said Casteel Engineering and Construction Company shall have made settlement with the owners of property abutting on that portion of said street, on account of the defects existing in said pavement, which settlement must be agreed upon by the said Casteel Engineering and Construction Company and said abutting property owners, reduced to writing and filed with the city clerk, before the said Casteel Engineering Company or its assigns shall be entitled to receive said tax bills.

"It is further ordered that the tax bills covering that portion of Seventh street from a point eighty feet west of the west line of Mound street shall not be delivered to the said Casteel Engineering and Construction Company until the said Casteel Engineering and Construction Company has given to said city a bond in the sum of two thousand ($2000) dollars for the maintenance of that portion of said curb and pavement in good condition for a period of three years. This requirement is made on account of the fact that rejected material was used by the contractor in the construction of the improvement on that portion of said street.

"When the maintenance bond above provided has been duly executed, the city clerk is hereby ordered and directed to issue tax bills against each of the above and foregoing described properties for the amount of the special tax herein levied against the same, and when said tax bills have been fully executed and recorded to deliver the same to the contractor in payment for the paving and otherwise improving of said street. Excepting the tax bills against the property abutting on that portion of said Seventh street lying west of Railroad street, which tax bills are to be retained by the city clerk as above provided.

"When the tax bills so delivered as above provided have been paid in full and presented to the city clerk, he shall credit the record with payment of the same."

Section 4 provides that the said tax bills when so issued shall become a lien on the property therein described and shall bear interest at the rate of eight per cent from thirty days after date of issue; and that in any action brought for recovery of the amount thereof, each of said tax bills shall be prima-facie evidence of the validity of the charges against the property. It appears that a bond was furnished in accordance with the requirements of section 3 of Special Paving Ordinance No. 92, and that on November 15, 1919, the board of aldermen, through the city clerk, notified the bonding company, as follows:

". . . the paving work of Casteel Engineering & Construction

Company, on Seventh street is very unsatisfactory as to progress and also the quality of the work being done."

The amended petition is in three counts, formal and similar in character, each alleging the elements necessary for recovery thereon and stating that within thirty days after the letting of the contract for the work, defendants gave written notice to the city clerk that they desired to make payment of the amount of the levy in three annual installments; each count of the petition covering such installment. The petition also alleges the three tax bills were duly assigned by the Casteel Engineering & Construction Company for value to Walter L. Casteel, the plaintiff herein.

The answer admits that Mound City, Holt county, Missouri, is a city of the fourth class, duly organized and existing, and generally denies each and every other allegation of the petition. As affirmative defense, it is alleged that Paving Resolution "F" by which the paving proceedings were inaugurated is unreasonable, void and of no validity, because (a) it was not enacted at any regular or special meeting of the board of aldermen legally held; (b) because it provided for the grading, paving and curbing of a part of the public roadway outside the limits of said city, and the tax bills issued thereon are void because they include as assessment against the said lots of defendants a proportionate share of the expense of such improvment; that the said Casteel Engineering & Construction Company failed to grade said street as required by said resolution; that said construction company failed to begin and complete the work within the time named in the contract and failed to construct sewers and drainage inlets required under the terms of the contract; that the cost of the said work, as called for in the said resolution and contract, was not apportioned in accordance with the contract and the laws and ordinances of the city; but that an undue and unreasonable portion of said cost is charged against the property of defendants; that said tax bills are improperly issued jointly against defendants' said lots, whereas the lots are separate tracts and parcels of land.

The reply is a general denial. Upon the issues thus made, the cause was submitted to the court. After hearing the evidence, the court found for defendants and judgment was accordingly entered of record. A motion for a new trial was unavailing and the cause comes to us for review by writ of error.

There are but three assignments of error, to-wit: (1) The finding and judgment are against the weight of the evidence and against the law under the evidence. (2) The judgment is for the wrong party and should have been for plaintiff. (3) The court erred in admitting incompetent and immaterial evidence offered by defendants. The third charge has not been briefed and we may consider

it abandoned. The other two, being directed generally against the finding and judgment of the court, properly may be considered together.

Under his points and authorities, plaintiff makes the general statement that the introduction of a special tax bill, regular on its face, is a prima-facie case for plaintiff and the burden is on defendant to allege and prove facts showing the tax bills void. This is a plain declaration of the well-established law in this State. Defendants do not deny or refute it and it may be accepted without further comment. In the same category is plaintiff's statement that it is a well-established rule that cases must be tried "within the paper issues." It is also insisted that a defense can be no broader than the one specially pleaded. Also that "it is elementary that a party is limited and restricted in the maintenance of an affirmative defense to the allegation in his answer." Plaintiff cites authorities in support of these several general statements of the law; but inasmuch as they are not refuted, an analysis of them would seem to be unwarranted and we pass over them without comment. The record shows no finding of facts or declarations of law were asked or given and in the judgment and order we are not informed upon what the decision herein was based. However, if the judgment rendered can be sustained for any valid reason, it is our duty to sustain it.

The petition alleges that the board of aldermen caused the cost of the work to be levied and assessed and that the tax bills were issued pursuant to the city ordinances. The answer is a general denial together with some specific defenses. The general denial placed in issue the question as to whether the proceedings ripened into a contract. [City v. Bacon, 144 Mo. App. 476, 129 S. W. 466; Cushing v. Powell, 130 Mo. App. 576, 109 S. W. 1054.] It will be noted the ordinance assessing the costs and ordering the tax bills declares the contract has not been performed as required. This, of itself, was substantial evidence upon which the court could hold that the contract had not been substantially performed. [See cases just cited.] The answer specifically pleaded as follows:

"That notwithstanding said alleged resolution and said contract entered into in pursuance thereto by said city and said construction company for the doing of said work required said construction company to begin said work within ten days after said contract was entered into and to complete the same within sixty days from the date of the award of said contract, and notwithstanding the time for the beginning and completion of said work were made essential conditions of said contract, said construction company wholly failed to begin or complete said work within the time named as above set out  .  .  ."

Thus the questions as to whether the work was performed within a reasonable time and whether it was substantially performed were put in issue by the pleadings.

It has been held that a contract for such improvements not performed within the time fixed, where time is made the essence of the contract, nor within a reasonable time, renders the tax bills void. [City of Brunswick v. Benecke, 289 Mo. 319, 233 S. W. 169.] In the instant case the facts are that the work was not completed within the time specified or within the extensions thereof and it was for the court to determine whether the work was done within a reasonable time. [See the Benecke case, supra; City of Maplewood v. Inv. Co., 267 S. W. 63, 66; Gilsonite Const. Co. v. Coal Co., 205 Mo. 49, 103 S. W. 93.] It is insisted by defendants, and we think properly, that neither the city council nor the city engineer can legally extend the time within which a public work can be completed after expiration of extensions. [Const. Co. v. Coal Co., supra; Hund v. Rackliffe, 192 Mo. 324, 325, 91 S. W. 500.; Neill v. Gates; 152 Mo. 592, 54 S. W. 460.] It was held in the Benecke case (289 Mo. 1. c. 320) that although there is a penalty clause, that "does not relieve against the requirement to complete the work in the time prescribed." The statement of facts covers the testimony on this point.

On the question of substantial performance, it has been held that no recovery can be had on tax bills where there is a lack of substantial performance. [McQuiddy v. Brannock, 70 Mo. App. 535.] The reason for this rule is found in the fact that while a municipal corporation is the agent of the property owner in making these improvements, yet the city cannot dispense with a substantial performance of its contracts. The rights of the property owner may not be entirely ignored. Therefore, on these two points (1) failure to complete the work within the time specified and extensions thereof, or within a reasonable time, and (2) failure of substantial performance, we think the court was justified in entering judgment for defendants.

One other point urged by defendants we think is quite sufficient to support the judgment. There was substantial and undisputed testimony that the ordinance required the paving of 119.53 feet of public highway outside the city limits on an extension of Seventh street west, and a share of this paving was assessed against the property of defendants in question. It is true plaintiff introduced some testimony to the effect that the said paving outside the city limits did not increase defendants' assessment, but this evidence apparently failed to impress the trial judge. We think this point alone quite sufficient to warrant an affirmance of the judgment.

For reasons above stated, the judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.